UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

SHERYL STEIN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Respondent.

Case No. SA CV 16-00046-DFM

MEMORANDUM OPINION AND ORDER

Sheryl Stein ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

**I.**

**BACKGROUND**

Plaintiff filed an application for DIB on January 4, 2013. Administrative Record ("AR") 19, 122-23, 200-01. After her application was denied, she requested a hearing before an ALJ. AR 155-56. A hearing was held on January

3, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). AR 31-64.

In a written decision issued March 18, 2014, the ALJ denied Plaintiff's claim for benefits. AR 19-27. In reaching his decision, the ALJ found that through Plaintiff's date last insured of December 31, 2012, she had the severe impairments of carpal tunnel syndrome, cubital tunnel syndrome, "TMJ disorder," trigeminal neuralgia,[1] occipital neuritis, cervical radiculopathy, "and/or myofascial pain syndrome."[2] AR 22. He found that notwithstanding those impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: only occasional balancing, stooping, crouching, kneeling, and climbing ramps and stairs; occasional use of the hands with "no forceful or strong gripping"; no overhead reaching or handling; and no exposure to workplace hazards such as unprotected heights and machinery. AR 24. Based on the VE's testimony, the ALJ found that a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform Plaintiff's past relevant work as a customer-service representative, both as actually and generally performed. AR 27. As such, he concluded that Plaintiff was not disabled. Id.

Plaintiff requested review of the ALJ's decision. AR 7. On November 25, 2015, the Appeals Council denied review. AR 1-5. This action followed.

---

[1] Trigeminal neuralgia is a chronic pain condition that affects the trigeminal nerve, which carries sensation from the face to the brain. Trigeminal neuralgia, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/basics/definition/con-20043802 (last accessed Jan. 20, 2017).

[2] The ALJ found that Plaintiff's alleged back and hip disorders, history of left-wrist facture, and mental impairments were not medically determinable impairments. AR 22-23. Plaintiff has not challenged those findings.

## II.

## DISCUSSION

Plaintiff argues that the ALJ erred in (1) discounting Plaintiff's credibility and (2) discounting the opinion of Plaintiff's treating physician, Dr. Susan Nugent. Joint Stipulation ("JS") at 4.

### A. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to give legally sufficient reasons for discounting her credibility. JS at 25-28. For the reasons discussed below, the Court disagrees.

#### 1. Applicable Law

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the alleged pain or other symptoms alleged.'" Id. at 1036 (citation omitted). Once a claimant does so, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). The ALJ may consider, among other factors, a claimant's

reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, her work record, and her daily activities. Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Smolen, 80 F.3d at 1283-84 & n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

**2. Relevant Facts**

In an undated Disability Report, Plaintiff stated that she had been unable to work since December 1, 2007, because of spondylolisthesis, osteoarthritis, "nerve entrapments," bilateral carpal tunnel syndrome, anxiety, ruptured ligaments of the right hand, trigeminal neuralgia, myofascial pain syndrome, "dominant left vertebral artery," and "many disabling conditions." AR 237-38.

In a March 11, 2013 function report, Plaintiff wrote that she had severe "neck/facial/jaw/temple/hand pain," "electric nerve pain" behind her left eye, and tingling and numbness in her fingers and feet. AR 257. Her daily activities included eating meals, meditating, praying, watching television, showering, brushing her teeth, cleaning up, doing neck exercises, and feeding her dog and taking it outside for a walk. AR 258. She used the computer to email her doctors. AR 261. She occasionally spent time with friends in person or talking to them on the phone. Id. Plaintiff prepared sandwiches or cereal daily. AR 259. Her household chores included light dusting and laundry, which she performed in a half hour once a week. Id. Plaintiff could drive and go out alone. AR 260. She shopped in stores for groceries for about a half hour at a time. Id. She could pay bills, count change, and use a checkbook. Id.

Plaintiff had problems with personal care because her hands were weak and painful. AR 258. Her conditions affected her ability to lift, bend, reach,

walk, kneel, talk, complete tasks, concentrate, use her hands, and get along with others. AR 262. She could not lift more than a pound and could pay attention for only "2 minutes." Id. Because of her conditions, Plaintiff was depressed and had "severe anxiety." AR 264.

At the hearing on January 3, 2014, Plaintiff reported that she had "a lot more neck pain and jaw pain" than in May 2009, when a different ALJ denied a prior DIB application. AR 35-36; see also AR 51. She asserted that her wrists were "weak" and she had "much more anxiety, to where my jaw seems to drift when I talk." AR 36-37. Plaintiff testified that "all [her] fingers go numb" and she had to wear wrist splints. AR 40. Her two big toes had "big bumps where there's no joint space" and she could "barely walk." AR 43-44. She also had "extreme pain" in her right hip and "[i]t feels almost like the ligaments are getting stuck in the joint." AR 45. She could walk between "two feet" and "a block" before needing to rest. Id. Plaintiff said she had degeneration of her left shoulder and could "barely use it." AR 46. She had "horrible" anxiety and more than once a day, she would have an episode where her heart would race and she would be short of breath. AR 48-49. Plaintiff did her own grocery shopping but would get "light things" and only one bag of groceries. AR 50. She could drive but had trouble turning her head. Id.

**3. Discussion**

As an initial matter, the ALJ credited many of Plaintiff's subjective complaints, finding it "reasonable to limit [Plaintiff] to light work and preclusion from hazards in consideration of her history of pain in the neck and upper extremities." AR 26. The ALJ also noted that he had "given [Plaintiff] the benefit of the doubt regarding her ability to use her hands," and included in her RFC restrictions to only occasional use of the hands, only occasional postural activities, and no overhead reaching or handling. Id. To the extent the ALJ partially discredited Plaintiff's testimony and allegations, AR 26, he gave

clear and convincing reasons for doing so.

First, the ALJ found that Plaintiff's medical records "do not reflect debilitating pain, significant medication side effects, and a longitudinal history of mental health treatment for depression and anxiety," id., and that in fact, "physical examinations reveal that [she] retained a significant degree of function in the affected areas through the date last insured," AR 25. Plaintiff's doctors repeatedly noted that she had normal ranges of motion, intact motor strength and sensation, normal test results, and normal gait. See, e.g., AR 330-31, 337, 361-63, 404-05, 437, 443-44, 459, 464-65, 473. On just two occasions in 2012 did Plaintiff's doctors find some limited range of motion in her neck. See AR 295-96, 317-18. The ALJ permissibly relied on this evidence to discount Plaintiff's allegations of debilitating functional limitations, such as her claims that she could "barely walk," AR 44, and could not lift more than a pound, AR 262. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").

Second, the ALJ noted that Plaintiff had been "reluctant to try some suggested treatment methods," which "suggests that [her] pain was not severe enough to compel her to employ all available options." AR 26. Plaintiff declined further nerve-conduction studies, AR 298, 316-17; refused physical and occupational therapy referrals, AR 316-17, 380; and refused several non-

opiate medications, AR 438, 467. One physician believed Plaintiff was "doctor shopping," AR 364; another noted her refusal to stop smoking marijuana, AR 467. Several doctors noted Plaintiff's refusal to accept their diagnoses. See AR 316-17, 361-62, 364, 433-34, 438, 467. The ALJ permissibly discounted Plaintiff's subjective complaints based on her failure to follow her doctors' treatment recommendations. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that ALJ may discount claimant's testimony in light of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); SSR 16-3p, 2016 WL 1119029, at *8 (noting that ALJ may discount subjective-symptom testimony "if the individual fails to follow prescribed treatment that might improve symptoms").

The ALJ also found that, despite Plaintiff's allegedly debilitating symptoms, she "remained capable of a variety of daily activities." AR 26. Plaintiff claimed that she was so debilitated by her medical conditions that she was, for example, unable to lift more than a pound, unable to walk more than a block at a time, could pay attention for only two minutes, and could "barely use" her left shoulder. But Plaintiff lived independently, could drive and go out alone, fed and walked her dog, shopped at the store for about a half hour at a time, prepared simple meals, and performed light household chores. The ALJ permissibly discounted Plaintiff's credibility based on the conflict between her alleged limitations and her daily activities. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that ALJ may discredit claimant's testimony when "claimant engages in daily activities inconsistent with the alleged symptoms" (citing Lingenfelter, 504 F.3d at 1040)); id. ("Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (holding

that ALJ properly discounted claimant's testimony because "she leads an active lifestyle, including cleaning, cooking, walking her dogs, and driving to appointments").

Plaintiff does not challenge the ALJ's reliance on any of those factors to discount her credibility. Rather, she contends that the ALJ's credibility finding must be reversed because he did not consider her "exemplary work history," and that "[a]gency policy set forth in 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-7p requires the ALJ to consider the claimant's exemplary work history as part of the credibility assessment."[3] JS at 25, 26; see AR 204-05 (showing that Plaintiff worked regularly from the 1970s to 2007). But even assuming the ALJ was required to consider Plaintiff's work record, any error was harmless because he provided three other reasons, all of which were supported by substantial evidence, for discounting Plaintiff's subjective complaints. See Carmickle, 533 F.3d at 1162 ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (alterations in original)); Jose v. Colvin, No. 16-00072, 2016 WL 6476943, at *6 (D. Haw. Nov. 1, 2016) (finding that, even assuming ALJ was required to consider work history, failure to do so was harmless error).

---

[3] SSR 96-8p provides guidance on assessing a claimant's RFC. SSR 96-8p, 1996 WL 374184 (July 2, 1996). In March 2016, SSR 96-7p was rescinded by SSR 16-3p, which sets forth guidance on evaluating symptoms in disability claims. See SSR 16-3p, 2016 WL 1119029. SSR 16-3p states, among other things, that an ALJ will use the factors in § 404.1529(c)(3) to evaluate a claimant's symptoms. 2016 WL 1119029, at *7. Section 404.1529(c)(3) states that in assessing a claimant's subjective complaints, the ALJ "will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons."

Remand is not warranted on this ground.

**B. Dr. Nugent's Opinion**

Plaintiff contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Nugent. JS at 4-17, 21-25. For the reasons discussed below, the Court disagrees.

**1. Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 404.1527(c).

**2. Relevant Facts**

On August 16, 2012, Dr. Nugent saw Plaintiff for complaints of cough, congestion, and pain in the left cheek. AR 312-13. Dr. Nugent diagnosed

pneumonia, hemoptysis, and tachycardia.[4] AR 313-14. On September 3, 2012, Dr. Nugent saw Plaintiff for a follow-up on her pneumonia. AR 308-09. Dr. Nugent noted that Plaintiff had a tender jaw and temple. AR 309.

On October 3, 2012, Dr. Nugent noted that Plaintiff complained of a "neck problem" and reported that her pain was worse on the left and that she could "barely talk." AR 306. On examination, Dr. Nugent found that Plaintiff had three tender trigger points. Id. She administered a trigger point injection and Plaintiff "experienced some immediate relief." Id. Dr. Nugent recommended ice, heat, and stretching exercises for the neck. Id.

On November 1, 2012, Dr. Nugent found that Plaintiff complained of facial pain on the left and could not tell whether the earlier injection had helped. AR 303. Dr. Nugent found that Plaintiff had a "[t]ender tiny cord on the left cheekbone" with a "little bump" that was possibly a neuroma.[5] AR 304. Dr. Nugent diagnosed facial neuroma, cervical radiculopathy, meralgia paresthetica,[6] insomnia, and trigeminal neuralgia. AR 304.

On November 27, 2012, Dr. Nugent found that Plaintiff had a "[t]ender

---

[4] Hemoptysis is coughing up blood. Coughing Up Blood (Hemoptysis), WebMD, http://www.webmd.com/lung/coughing-up-blood (last updated Nov. 19, 2015). Tachycardia is a common type of heart-rhythm disorder in which the heart beats faster than normal while at rest. Tachycardia, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/tachycardia/home/ovc-20253857 (last updated Jan. 11, 2017).

[5] A neuroma is a disorganized growth of nerve cells at the site of a nerve injury. Neuromas and Complex Regional Pain Syndrome, Mass. General Hosp., http://www.massgeneral.org/plasticsurgery/services/procedure.aspx?id=2286 (last accessed Jan. 27, 2017).

[6] Meralgia paresthetica is a condition characterized by tingling, numbness and burning pain in the outer thigh. Meralgia paresthetica, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852 (last updated Mar. 29, 2014).

little nodule on the left occiput" that "radiates pain to the left eye," and a tender trigger point. AR 298-99. Dr. Nugent administered a trigger-point injection and Plaintiff "experienced some immediate relief." Id. Dr. Nugent diagnosed trigeminal neuralgia and myofascial pain syndrome. AR 299. She instructed Plaintiff to continue her neck exercises and using heat. Id.

On August 8, 2013, Dr. Nugent completed a check-off medical-opinion questionnaire regarding Plaintiff's physical abilities. AR 615-25. Dr. Nugent noted that she had been seeing Plaintiff for "one year," during which time they had 10 visits and exchanged "many emails."[7] AR 615. She listed Plaintiff's diagnoses as "chronic pain" of the face and neck and probable occipital neuritis; arthritis of the feet and wrists; and bilateral carpal tunnel syndrome. Id.

Dr. Nugent opined that Plaintiff could walk "less than a block" before she needed to rest, sit for "[m]ore than 2" hours at a time for a total of about 2 hours in an 8-hour work day, and stand for 30 minutes at a time for a total of less than 2 hours in an 8-hour work day. Id. Plaintiff needed a job that permitted shifting positions at will between sitting, standing, or walking, and she needed to take unscheduled 10-minute breaks every half hour if standing and walking and every 1 to 2 hours if sitting. AR 615-16. Plaintiff could occasionally lift and carry less than 10 pounds. AR 616. She had "significant limitations" in doing repetitive reaching, handling, or fingering. Id. She could never use her hands to grasp, turn, or twist objects; she could use her left hand for fine manipulation for only 5 percent of the workday and could not use her right hand for such work; and she could use either arm for reaching overhead for only 10 percent of the workday. Id. Plaintiff could bend or twist at the waist

---

[7] Plaintiff incorrectly states that Dr. Nugent had treated Plaintiff for two years at the time of her August 2013 opinion. See JS at 13.

each for 10 percent of the workday; she could occasionally twist, stoop, crouch, and climb stairs; and she could never climb ladders. AR 616-17. Plaintiff's impairments were likely to produce "good days" and "bad days" and her impairments or treatment would cause her to be absent from work more than twice a month. AR 617. Dr. Nugent attached to her opinion several questionnaires that Plaintiff had completed to self-report her levels of anxiety; depression; "disabilities of the arm, shoulder, and hand"; and "neck disability."[8] AR 618-25.

**3. Discussion**

The ALJ provided specific and legitimate reasons for according "little weight" to Dr. Nugent's controverted opinion.[9] AR 25. First, the ALJ noted that "it appears that Dr. Nugent based this opinion on several questionnaires,

[8] In the questionnaires, Plaintiff indicated that she had "severe difficulty" with most listed tasks, including opening a tight or new jar, turning a key, preparing a meal, pushing open a heavy door, placing an object on an overhead shelf, doing heavy household chores, gardening or perform yard work, carrying a shopping bag or briefcase, carrying an object weighing more than 10 pounds, changing a lightbulb overhead, putting on a pullover sweater, and using a knife to cut food. AR 620-21. Plaintiff also reported that she had severe pain, tingling, weakness, and stiffness in her arm, shoulder, or hand. Id. She had "severe" neck pain that came and went, "severe" and frequent headaches, and "a great deal of difficulty in concentrating." AR 623-24. She could lift only "very light" weights. AR 623-24. Plaintiff indicated that she could "hardly do any recreational activities because of pain in [her] neck." AR 624-25.

[9] Dr. Nugent's opinion conflicted with those of state-agency consultants Keith Wahl and G. Taylor-Holmes, who reviewed the medical records and opined that Plaintiff was capable of a light range of work with unlimited reaching, only frequent gross and fine manipulation, no forceful gripping or torqueing with the right arm, occasional posturals but no climbing, only occasional neck movement, no exposure to hazards, and no hypervigilance or supervision of others. AR 26, 117-18, 128-29, 131-33. The ALJ partially credited those opinions. AR 26.

which [Plaintiff] completed to self-assess her various limitations." Id. Despite finding that Plaintiff had extreme physical limitations, Dr. Nugent recorded very few clinical findings in her treatment notes, and she cited no supporting medical evidence, test results, or clinical findings in her August 2013 opinion, but rather attached Plaintiff's self-reports. AR 618-25. It therefore appears that Dr. Nugent based her findings largely on Plaintiff's own reports of her symptoms. And as discussed above in Section II.A, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints. As such, the ALJ permissibly discounted Dr. Nugent's opinion on this basis. See Thomas, 278 F.3d at 957 (ALJ "need not accept the opinion of . . . a treating physician" if it is "brief, conclusory, and inadequately supported by clinical findings"); Tonapetyan, 242 F.3d at 1149 (holding that when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's subjective complaints).

Second, the ALJ found that Dr. Nugent's opinion was "inconsistent with the overall record." AR 25. As discussed above in Section II.A, the medical records support the ALJ's finding that Plaintiff retained a "significant degree of function in the affected areas through the date last insured" of December 31, 2012. Id. Plaintiff argues that the ALJ "selectively refers to certain positive findings, such as normal range of motion in the neck and extremities, and intact sensation," but that "the record also documents a positive Tinel's sign at the wrists and elbows, diffuse atrophy of the hands, decreased sensation on the left side of the face, bilateral atrophy temporally, and positive trigger points in the neck and shoulders." JS at 13. But as Plaintiff acknowledges, id., the ALJ discussed those findings in his opinion, see AR 22, 26; he also specifically credited a letter from Plaintiff's neurologist that summarized those findings. See AR 611 (letter from neurologist Susan Skinner), 26 (ALJ noting that he "finds Dr. Skinner's synopsis consistent with

the treating records"). The ALJ accommodated those findings by limiting Plaintiff to performing light work with only occasional balancing, stooping, crouching, kneeling, and climbing ramps and stairs; occasional use of the hands with "no forceful or strong gripping"; no overhead reaching or handling; and no exposure to workplace hazards such as unprotected heights and machinery. AR 24. The ALJ permissibly discounted Dr. Nugent's findings of more extreme limitations—such as her finding that Plaintiff could not walk more than a block at a time or sit for more than 2 hours in an 8-hour day and could only occasionally lift and carry less than 10 pounds—as inconsistent with the medical record. Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole . . . or by objective medical findings[.]"); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").[10]

Plaintiff contends that the ALJ erred by failing to explicitly consider all of the factors set out in § 404.1527(c), such as Dr. Nugent's "numerous personal examinations of Plaintiff," her "familiarity with the extensive medical history," or her "specialty as a board certified family practitioner." JS at 11.

[10] The Commissioner contends that the ALJ permissibly accorded less weight to Dr. Nugent's August 8, 2013 opinion because it was dated eight months after Plaintiff's date last insured, December 31, 2012. JS at 19-20. It is true that nothing in the report indicates that it reflects Plaintiff's condition on or before December 31, 2012, and that it likely does not, given Plaintiff's own testimony that her condition is worsening over time. See AR 36-37; see also AR 24 n.1 (ALJ noting that Plaintiff's disability had increased since last decision). But contrary to the Commissioner's assertion, the ALJ did not rely on this factor in discounting Dr. Nugent's opinion. The Court therefore does not consider it. See Bray, 554 F.3d at 1225 (holding that district court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

But the ALJ clearly did consider Dr. Nugent's treatment history, which he summarized or cited in his opinion, see AR 22 (noting that Plaintiff showed three tender points in Oct. 2012), 25 (citing Dr. Nugent's treatment notes). And in any event, even if the ALJ erred in not explicitly weighing the extent of Dr. Nugent's personal examinations of Plaintiff, it was harmless because the record shows only five visits over four months; the first two focused on Plaintiff's pneumonia and the last three mainly noted Plaintiff's complaints of pain and made few objective findings.

Although Dr. Nugent may have been familiar with at least some of Plaintiff's medical history, see AR 301 (Dr. Nugent noting that she had reviewed notes from Plaintiff's last visit with neurologist and "the MRI and MRA she had a couple years ago"); but see 297-99 (asking Plaintiff to bring her copy of nerve conduction studies), 303-06, 307-10, 312-14 (not discussing medical history); her treatment notes and August 2013 opinion cite no objective findings or testing to support her conclusions, see AR 615-17. And finally, Dr. Nugent's board certification in family medicine does not appear to be a "specialization" relevant to Plaintiff's medical conditions; Dr. Nugent referred Plaintiff to other specialists, such as a neurologist and cardiologist, for treatment of her conditions. See AR 305, 308. As such, even if the ALJ somehow erred in failing to specifically address those factors, it was harmless because it would not have affected the ALJ's decision. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (non-prejudicial or irrelevant mistakes harmless).

Plaintiff also points to § 404.1527(c)(2)(ii)'s statement that "[w]hen the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source." JS at 11-12. But although it is true that an ALJ should generally accord more weight to the opinion of a treating source when she is

familiar with the claimant's impairment, this is not an absolute rule. Rather, an ALJ may reject the controverted opinion of a treating physician by providing specific and legitimate reasons. Carmickle, 533 F.3d at 1164. As discussed above, the ALJ did so here.

Remand is not warranted on this ground.

**III.**

**CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 2, 2017

DOUGLAS F. McCORMICK
United States Magistrate Judge